**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
_____

**JADAASHA SANDERS,**

        **Plaintiff,**

  **-v-**
                                        **18-CV-753**

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**
_____

## DECISION AND ORDER

As set forth in the Standing Order of the Court regarding Social Security Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have consented to the assignment of this case to the undersigned to conduct all proceedings, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g). Dkt. No. 15. Plaintiff Jadaasha Sanders ("Plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, Plaintiff's motion (Dkt. No. 8) is denied, and defendant's motion (Dkt. No. 13) is granted.

# BACKGROUND[1]

On April 28, 2014, plaintiff protectively filed an application for SSI, alleging disability due to a learning disability, attention deficit hyperactivity disorder (ADHD), anger issues, and lead exposure. Tr. at 46, 137-42, 171.[2] Her claim was denied at the initial level and she requested a hearing. Tr. at 56-61, 68. On February 8, 2017, Administrative Law Judge ("ALJ") Timothy M. McGuan held a hearing at which plaintiff appeared with counsel and testified. Tr. at 26-45. An impartial vocational expert also testified. Tr. at 26, 212-14. The ALJ issued a decision unfavorable to Plaintiff on April 25, 2017 (Tr. at 9-25), and the Appeals Council subsequently denied review (Tr. at 1-6). This timely action followed. Dkt. No. 1.

# DISCUSSION

**Scope of Judicial Review**

The Court's review of the Commissioner's decision is very deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision

---

[1] The Court presumes the parties' familiarity with plaintiff's medical and educational history, which is summarized at length in their moving papers.
[2] Citations to "Tr.___" refer to the pages of the administrative transcript, which appears at Docket No. 5.

2

rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

"Two related rules follow from the Act's standard of review." *Wilcox v. Comm'r of Soc. Sec.*, No. 16-CV-726-MJR, 2018 WL 4090328, at *2 (W.D.N.Y. Aug. 28, 2018). The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983) (abrogation on other grounds. The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner must apply the correct legal standard to his or her factual conclusions. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard constitutes reversible error. *Id.*

**Standards for Determining "Disability" Under the Act**

A "disability" is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

3

expected to result in death[,] or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 423(d)(2)(A). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. § 404.1520(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." 20 C.F.R. § 404.1520(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." 20 C.F.R. § 404.1520(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [his or her] physical or

4

mental ability to do basic work activities." *Id.* As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. 20 C.F.R. § 404.1520(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.*

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. 20 C.F.R. § 404.1520(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." 20 C.F.R. § 404.1520(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an

adjustment to other work." 20 C.F.R. § 404.1520(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.*

The burden through steps one through four described above rests on the claimant. If the claimant carries their burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

**The ALJ's Decision**

The ALJ followed the requisite five-step analysis for evaluating Plaintiff's claim. Under step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date, April 28, 2014. Tr. at 14. At step two, the ALJ found that plaintiff had the severe impairments of learning disorder and obesity. Tr. at 14. At step three, the ALJ determined that Plaintiff's impairments did not meet the listed impairments, particularly, Listing 12.11 (neurodevelopmental disorders). Tr. at 14-16. The ALJ then found that Plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but with the following non-exertional limitations: she can occasionally understand, remember, and carry out complex and detailed tasks; she can engage in simple repetitive work but cannot read as part of the job, and must, rather, learn by demonstration. Tr. at 16. Proceeding to step four, the ALJ found that plaintiff could perform other work that exists in substantial numbers in the national economy, including the jobs of garment folder and garnisher. Tr. at 19-20.

Accordingly, the ALJ found that plaintiff had not been under a disability within the meaning of the Act. Tr. at 20.

**Plaintiff's Challenges**

Plaintiff raises three interrelated arguments in favor of remand: (1) the ALJ erroneously failed at step two to find intellectual disability or borderline intellectual functioning as one of Plaintiff's severe impairments; (2) the ALJ failed to properly follow the special technique for evaluating mental impairments; and (3) Plaintiff's RFC is not supported by substantial evidence. Dkt. No. 8-1, pp. 8-21.

Step two of the disability evaluation, the severity determination, is intended to "identify[ ] at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled." *Bowen v. Yuckert,* 482 U.S. 137, 153 (1987); *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir.1995) (recognizing that the severity determination is meant "to screen out *de minimis* claims"). As set forth in the regulations, "[i]f you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled." 20 C.F.R. §§ 404.1520(c), 416.920(c). Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). "An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require." 42 U.S.C. § 423(d)(5)(A); *Bowen,* 482 U.S. at 148; *see also*

*Taylor v. Astrue,* 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012) (holding that "[t]he claimant bears the burden of presenting evidence establishing severity").

Notably, "the mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment' is not, by itself, sufficient to render a condition severe." *Taylor,* 32 F. Supp. 3d at 265 (internal citations omitted). Consistent with this reasoning, "if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work[,]'" the ALJ should not find a severe condition. *Rosario v. Apfel,* No. 97 CV 5759, 1999 WL 294727, at *5 (E.D.N.Y. Mar. 19, 1999) (quoting SSR 85-28, 1985 WL 56856, at *3).

When a claimant allegedly suffers mental impairments, the ALJ is required to follow a "special technique" at each level of the administrative review process to determine whether the claimant has any severe mental impairments and whether the impairments meet or equal the listings. *Kohler*, 546 F.3d at 265; 20 C.F.R. Part 404, Subpt. P, App'x. 1; 20 C.F.R. § 404.1520a. Specifically, the ALJ must assess the claimant's degree of functional limitation resulting from a mental impairment in four broad functional areas identified in Paragraph B of the adult mental disorders listings. *See* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). Effective January 17, 2017, the four functional areas include: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4)

adapting or managing oneself. 20 C.F.R. § 416.920a(c)(3). [3] In assessing the functional areas, an ALJ must apply the degree of limitations using a five-point scale consisting of "none, mild, moderate, marked, and extreme." 20 C.F.R. § 416.920a(c)(4). An "extreme" limitation of one or a "marked" limitation of two of these areas indicates "significant deficits in adaptive functioning." 20 C.F.R. Part 404, Subpt. P. App'x, § 12.05B. If the degree of the limitations is "none" or "mild," an ALJ will generally find the impairments non-severe; however, if they are severe, an ALJ must determine if the disorder meets or equals a listing. 20 C.F.R. § 416.920a(d)(1-2). "The ALJ's written decision must 'reflect application of the technique, and . . . include a specific finding as to the degree of limitation in each of the [four] functional areas.'" *Kennerson v. Astrue,* No. 10-CV-6591 (MAT), 2012 WL 3204055, at *14 (W.D.N.Y. Aug. 3, 2012) (citing *Kohler*, 546 F.3d at 266); *Howard v. Comm'r of Soc. Sec.*, 203 F. Supp. 3d 282, 295-97 (W.D.N.Y. 2016).

"Courts have held that error at step two in determining the severity of impairments is harmless if the ALJ finds that at least one other severe impairment and continues through the sequence of the disability analysis because the non-severe impairments can later be considered at the RFC stage." *Howard,* 203 F. Supp. 3d at 297 (citing cases); *Reices-Colon v. Astrue,* 523 F. App'x 796, 798 (2d Cir. 2013) (holding that the ALJ's failure to find two impairments "severe" at step two was harmless, because the ALJ considered them later in the evaluation process). While this harmless error doctrine does not always apply in relation to mental impairments, *Howard,* 203 F. Supp. 3d at 297-98, uncertainty as to whether an ALJ applied the special technique during the

---

[3] At the time of Plaintiff's consultative evaluation, the four functional domains were activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation.

severity stage will not, "standing alone, warrant remand or reversal if the ALJ's other findings show that the proper legal standards were applied and that all of [the claimant's] impairments were properly considered at all of the subsequent steps." *Booker v. Astrue*, No. 1:07-CV-646 GLS, 2011 WL 3735808, at *4 (N.D.N.Y. Aug. 24, 2011).

This Court also finds that although the ALJ did not employ the special technique and did not find intellectual disability and/or borderline intellectual functioning as severe disorder(s) during his severity analysis (step two), this error was harmless as he considered Plaintiff's diminished intellectual abilities in deciding whether her impairments met or equaled the listings (step three) and in formulating her RFC (step four). Relatedly, this Court finds that Plaintiff has not met her burden to show that she suffers from an intellectual disability or borderline intellectual functioning as opposed to a learning disorder as the ALJ determined.

Plaintiff argues that the "ALJ failed to acknowledge or evaluate the objective medical evidence showing deficient intelligence[,]" including an 8/26/2014 "intelligence evaluation" conducted by consulting examiner Gregory Fabiano, PhD (Tr. at 313-17). Dkt. No. 8-1, pp. 9-10. However, a review of the decision shows that the ALJ discussed Dr. Fabiano's report at length, citing to it in his analysis of Plaintiff's degree of functional limitation in the four relevant functional areas (Tr. at 15-16) and giving the doctor's opinion "significant weight" in formulating Plaintiff's RFC (Tr. at 17-18). Dr. Fabiano's report contains Plaintiff's cognitive test results in the areas of reading/decoding, verbal comprehension, working memory, perceptual reasoning, processing speed, as well as her full-scale IQ. Tr. at 314-16. Despite Plaintiff's objectively low scores on all of these

10

measures, Dr. Fabiano's report does not compel a finding that Plaintiff has a severe impairment(s) of intellectual disability and/or borderline intellectual functioning. Dr. Fabiano himself acknowledged that Plaintiff's full-scale IQ (70) fell within the borderline range of functioning, her processing speed was within the low-average range, her nonverbal reasoning abilities were within the borderline range, and her verbal comprehension and working memory were in the extremely low range. Tr. at 325-16. But he explicitly rejected a diagnosis of intellectual disability, reasoning that "in spite of these potential limitations in cognitive abilities, the claimant appears to be in general exhibiting adaptive functioning in most major life domains." Tr. at 316 (stating "[t]herefore, a diagnosis of intellectual disability is not provided at this time").

Consistent with Dr. Fabiano's opinion, the ALJ declined to find that Plaintiff was intellectually disabled or had borderline intellectual functioning, but rather, that she had a learning disorder which affected her ability to read. Tr. at 14, 316. After making the finding at step two that Plaintiff suffered from the severe impairment of a learning disability, the ALJ included in the RFC a limitation that Plaintiff could not read as part of the job, but rather must be taught by demonstration. Tr. at 16. At step three, the ALJ considered whether Plaintiff's mental impairment met Listing 12.11 (relating to neurodevelopmental disorders such as learning disorders, borderline intellectual functioning, and tic disorders), 20 C.F.R. § Pt. 404, Subpt. P, App'x 1, and concluded that it did not. Of particular importance, the ALJ found that Plaintiff did not meet the Paragraph B criteria because she did not have an extreme limitation of one, or marked limitation of two of the relevant areas of functioning. Rather, the ALJ found that Plaintiff had: (1) mild limitations in understanding, remembering, or applying information; (2) mild

11

limitations in interacting with others; (3) moderate limitations in concentrating, persisting, or maintaining pace; and (4) mild limitations in adapting or managing oneself. Tr. at 15. In making this finding, the ALJ relied upon Dr. Fabiano's report, Plaintiff's educational records, her work history as a home health care aide, her activities of daily living, and her testimony that cleaning the house was "easy." Tr. at 15-16.

Plaintiff argues that because the four functional domains were revised between the time that Dr. Fabiano examined Plaintiff and the time that the ALJ rendered his decision, her case should be remanded for a medical opinion addressing the "new" functional areas.[4] This Court is not persuaded. Social Security Ruling ("SSR") 17-2, upon which Plaintiff relies, applies only to the determination of whether a claimant's impairment medically equals a listed impairment, not whether it actually meets the requirements of a listed impairment. In Plaintiff's case, the ALJ considered whether claimant's impairment actually met Listing 12.11 (neurodevelopmental disorder). Tr. at 14-16. Accordingly, SSR 17-2P does not appear to apply to Plaintiff's case.

Even if it did apply, SSR 17-2P does not compel remand in Plaintiff's case because she has offered no evidence, other than the cognitive test scores in Dr. Fabiano's report, which would suggest that Plaintiff is intellectually disabled (historically, mentally retarded). As previously noted, Dr. Fabiano explicitly rejected such a diagnosis because Plaintiff was "exhibiting adaptive functioning in most major life

---

[4] A person has a "marked limitation" in any category if "functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited" and an "extreme limitation" when he or she is unable "to function in this area independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. part 404, Subpt. P, App'x 1, § 12.00F(2).

12

domains." Tr. at 316.  Earlier medical records from Rucheet Patel, MD, from May 13, 2013, indicate that Plaintiff, by her own report, earned "A's and B's" in school and sometimes "C's," and that she had no abnormalities.  Tr. at 258.  Plaintiff was 17 at that time.  Moreover, Plaintiff's school records show that although she was classified with a "Learning Disability" and struggled with reading, Plaintiff had "strong listening comprehension," could write simple sentences, participated in same State and district wide assessment of student achievement administered to general education students, demonstrated talent in baking and hairstyling, was a "kind, polite, [and] mature young lady" with "many friends" who planned to attend cosmetology school and live independently.  Tr. at 222, 229.  After dropping out of high school because she had a baby, Plaintiff reported that she took care of her baby daily, cooked, cleaned, and shopped, and was not receiving any psychological or psychiatric treatment.  Tr. at 305-308.

SSR 17-2P explicitly states that when an ALJ "believes that the evidence does not reasonably support a finding that the individual's impairment(s) medically equals a listed impairment, we do not require the adjudicator to obtain [medical expert] evidence or medical support staff input prior to making a step 3 finding that the individual's impairment(s) does not medically equal a listed impairment." SSR 17-2p, 2017 WL 3928306, at *4 (S.S.A. 2017); *De Gonzalez v. Berryhill*, No. 16-CV-06723 (JMA), 2018 WL 6834474, at *8 (E.D.N.Y. Dec. 28, 2018).  The record in Plaintiff's case does not support a finding that her impairments medically equaled intellectual disability (mental retardation) or borderline intellectual functioning.  Accordingly, the ALJ did not err by not getting another medical opinion addressing the "new" functional domains.

13

That the ALJ did not explicitly consider Listing 12.05 (relating to intellectual disability, historically called mental retardation) does not require this Court to remand Plaintiff's case. To meet this particular listing, 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.05B, Plaintiff would have to meet the same Paragraph B criteria which the ALJ already determined she did not meet. This Court finds that the ALJ's reasoning in finding only mild or moderate limitations in the four areas of functioning was well reasoned and supported. For this reason, Plaintiff cannot show that the ALJ's failure to consider whether her diminished intellectual capacity met Listing 12.05 was anything other than harmless error. Accordingly, Plaintiff's request to remand on this basis is denied.

Finally, this Court finds that the ALJ's decision was supported by substantial evidence. As previously noted herein, the substantial evidence standard of review is a very deferential standard, even more so than the "clearly erroneous" standard. *Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 447-48 (2d Cir. 2012) (citing *Dickinson v. Zurko,* 527 U.S. 150, 153 (1999)). When determining whether the Commissioner's findings are supported by substantial evidence, the Court's task is "'to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.'" *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)). If there is substantial evidence for the ALJ's determination, the decision must be upheld, even if there is also substantial evidence for the Plaintiff's position. *See Perez v. Chater,* 77 F.3d 41, 46-47 (2d Cir. 1996); *Conlin ex rel. N.T.C.B. v. Colvin*, 111 F. Supp. 3d 376, 384 (W.D.N.Y. 2015). Likewise, where the evidence is susceptible to more than one rational interpretation, the

Commissioner's conclusion must be upheld.  *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

The ALJ concluded that Plaintiff could perform a full range of work at all exertional levels, but with the primary non-exertional limitation of learning by demonstration rather than reading. Tr. at 16.  The ALJ predicated his decision on the record evidence including:  Dr. Fabiano's opinion that while Plaintiff had cognitive deficits, she appeared to have no limitations in her ability to maintain a regular schedule or make appropriate decisions, and only mild limitations in her ability to follow and understand simple directions and instructions, perform simple tasks independently, relate adequately with others, and appropriately deal with stress; John Schwab, D.O.'s opinion that Plaintiff had no restrictions; educational records relating that Plaintiff was qualified as learning disabled in school, attended general education classes until she was 16 years old, got along well with her peers and had many school friends, and benefited from small group instruction; and Plaintiff's testimony that she works part-time as a home health care aide and interacts frequently with clients who direct her how to help them, cares for her infant son and older sister who has cerebral palsy, finds cleaning the house to be easy, and bathes and grooms herself, cooks and prepares food, does laundry, shops, manages her money and takes public transportation but has difficulty understanding what she reads and can be forgetful.  Tr. at 16-18.

In the view of this Court, this evidence is more than sufficient to support the ALJ's conclusion that Plaintiff is not disabled.  *Moran v. Astrue,* 569 F.3d 108, 112 (2d Cir. 2009) (stating that substantial evidence is "more than a mere scintilla").  Plaintiff's

15

RFC is wholly consistent with the medical, educational, and psychological records, as well as Plaintiff's own testimony.  The restriction that Plaintiff cannot read as part of her job but must learn through demonstration accommodates her stated limitation that she cannot understand what she reads.  Plaintiff's belief that she is more cognitively limited than the ALJ determined is not a legally sufficient reason to disturb the ALJ's decision.

## **CONCLUSION**

For the reasons stated herein, this Court finds that the ALJ's decision is free from legal error and supported by substantial evidence.  Accordingly, Plaintiff's motion for judgment on the pleadings (Dkt. No. 8) is hereby DENIED, and the Commissioner's motion for judgment on the pleadings (Dkt. No. 13) is hereby GRANTED.  The Clerk of the Court is directed to close this case.

**SO ORDERED.**

DATED:   Buffalo, New York
         January 17, 2020

*s/ H. Kenneth Schroeder, Jr.*
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**